1

2

3

4

5

6

7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

8   MICHAEL HOWARD,                          No. 1:06-cv-0613-TAG

9                           Plaintiff,       MEMORANDUM OPINION AND ORDER
                                             ON PLAINTIFF'S APPEAL FROM
10            vs.                            ADMINISTRATIVE DECISION

11   MICHAEL J. ASTRUE,                      ORDER REMANDING CASE PURSUANT
     Commissioner of Social Security,[1]     TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
12
                            Defendant.       ORDER DIRECTING THE CLERK TO
13   _____/       ENTER JUDGMENT IN FAVOR OF
                                             PLAINTIFF AND AGAINST DEFENDANT
14

15                              <u>**INTRODUCTION**</u>

16          Plaintiff Michael Howard ("Claimant") seeks judicial review of an administrative decision

17   denying his claim for Supplemental Security Income ("SSI") payments due to his disabilities,

18   pursuant to Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 et seq.[2]  Pending

19   before the Court is Claimant's appeal from the administrative decision of the Commissioner of

20   Social Security ("Commissioner").  Claimant, through counsel, filed his complaint on May 16, 2006,

21   and his opening brief on December 5, 2006.  (Docs. 1, 15).  The Commissioner filed an opposition

22   to the appeal on January 8, 2007.  (Doc. 18).  Claimant filed a reply brief on January 19, 2007.  (Doc.

23   19).

24          Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented

25   _____

26          [1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
     Security Administration.  42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

27          [2] Claimant applied for disability insurance benefits under to Title II of the Act, 42 U.S.C. § 402 et seq., in
28   August 2002, which apparently was denied on January 7, 2003, but was not appealed.  (Administrative Record
     ("AR") 117-20, 238).

to proceed before a United States Magistrate Judge, and, by an order dated January 3, 2006, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 17).

## JURISDICTION

On December 30, 2003, Claimant filed an application for SSI, which was denied initially and on reconsideration. (Administrative Records ("AR") 67-69, 33, 43, 47-51, 53-58). On September 7, 2005, after timely requesting a hearing, Claimant and his counsel appeared before Administrative Law Judge ("ALJ") Sean Teehan. (AR 59, 236-304). On December 14, 2005, the ALJ issued a written decision finding that Claimant was not disabled for purposes of SSI. (AR 13-24). The Appeals Council denied Claimant's request for review on March 20, 2006. (AR 4-6). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On May 16, 2006, Claimant timely filed this action. (Doc. 1).

## STATEMENT OF FACTS

Because the facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by the Claimant and the Commissioner, only a summary will be presented here. In his application paperwork, Claimant alleged an inability to work due to muscular, tendon, spinal disc problems, and pain related to a back injury, arthritis, blindness in his left eye, and auditory problems, with an alleged onset date of January 21, 1999. (AR 72, 86, 98).

At the September 7, 2005, hearing, Claimant, represented by counsel, testified that he was born on October 23, 1950, making him 55 years old at the time of ALJ Teehan's decision, and had graduated from high school. (AR 243). He added that he alternates between living with his ex-wife and one of his daughters and with his mother. (AR 275-276). Claimant further stated this his only source of income is general relief. (AR 276).

Regarding his work history, Claimant testified that the majority of his jobs had been as produce clerks or managers. (AR 245, 264-271). His last job was a "lube tech" at Wal-Mart, which involved lubricating cars and changing oil and tires. (AR 244, 272). According to Claimant, he suffered a work-related injury to his back at Wal-Mart in 1999, which prevents him from returning

to the workforce.  (AR 244, 272).  Claimant also reported that, although he always had impaired

vision in his left eye, his visual acuity in his right eye was deteriorating.  (AR 262-264).  According

to Claimant, he has leg, lower back, and, more recently, neck pain, for which his doctor prescribed

Vicodin and Indocin.[3]  (AR 248).  Claimant stated that the medications help, but they cause him to

feel drowsy for an hour after waking up, which affects his ability to concentrate and pay attention

to things.  (AR 248, 259-260).  Claimant testified that he tries to avoid taking the medicine during

the day because he does not want to feel groggy, but the severity of his pain necessitates that he take

the medicine three days out of seven.  (AR 260).  He added that the grogginess lasts three or four

hours after he takes the medicine, during which time he would not be able to work.  (AR 260-261).

Claimant stated that he did not think that his doctor planned to refer him to a specialist or deviate

from his current treatment.  (AR 261).

        Regarding his exertional abilities, Claimant testified that lifting and carrying ten pounds

increases his pain.  (Id.).  He added that he would not be able to lift ten pounds for a total of two-to-

three hours over the course of an eight-hour day.  (Id.).  In addition, Claimant reported that he could

walk less than one block; sit approximately two hours if he were allowed to change his position

every fifteen minutes; and stand for fifteen minutes, or a total of one hour in an eight-hour day.  (AR

249-253).  Moreover, Claimant testified that he would need frequent breaks during which he could

lay prone on a couch, which breaks would consume approximately 60% of the day.  (AR 254-255).

        With respect to his daily activities, Claimant testified that he watches television, washes the

dishes with frequent breaks, goes to the store with his daughter and sits while she shops, and could

make a sandwich, but he does not cook his meals and does not have a drivers license because of his

poor vision.  (AR 255-257, 277).  He further testified that he attends church on Sundays, but walks

in and out of the hour-long service.  (AR 258).  Claimant stated that he sings in church, but was

interrupted before he could complete his sentence.  (AR 259).  He acknowledged that he dressed

himself.  (Id.).

---

        [3] Indocin is a non-steroidal, anti-inflammatory drug used to treat mild-to-moderate pain, osteoarthritis, and
rheumatoid arthritis.  Vicodin is a combination of a narcotic and acetaminophen prescribed for moderate-to-severe
pain.

1   Vocational expert ("VE") Cheryl R. Chandler then testified regarding the classification and

2   transferability of Claimant's past relevant work and skills, and whether there were jobs available in

3   significant numbers in the national economy that an individual with specified limitations could

4   perform. (AR 281-293). The ALJ posed three hypothetical questions, all of which involved an

5   individual of Claimant's age, education, and work history. (AR 286). In the first two hypotheticals,

6   the ALJ presented an individual with limitations identical or similar to those determined by a DDS

7   physician (see AR 159-67), based upon which the VE found that the individual could perform light,

8   semi-skilled or unskilled work, and provided several examples, including the number of jobs

9   available locally and nationally and their corresponding Dictionary of Occupational Title ("DOT")

10  numbers. (AR 287-291). In his third hypothetical, the ALJ presented an individual with the

11  limitations that Claimant testified he had, excluding the side-effects if he had to take his medicine,

12  and the VE found that such a person could not work. (AR 291). The VE subsequently stated that

13  if an individual could not concentrate for three or four hours for three out of seven days, he would

14  not be able to work consistently. (AR 296). Claimant's attorney then posed a question in which, as

15  the VE construed it, the individual could perform light work with the additional requirement that he

16  be permitted to alternate between sitting and standing. The VE noted that she would look at

17  sedentary work to find jobs within those limitations. (AR 291-294). The VE testified that the

18  available jobs would be reduced, and stated that she was aware of cashiering and assembly jobs, or

19  positions with large businesses, in which the employer provided a stool to enable the employee to

20  sit and stand at will. (AR 292). VE Chandler stated that she could not provide DOT numbers

21  because, with respect to the jobs that she previously identified, the employers were not consistent

22  with respect to whether they permitted a person in a specific position to alternate between sitting and

23  standing, and she did not estimate the number of available jobs. (AR 295).

24  ## RELEVANT LEGAL FRAMEWORK

25  To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be

26  "unable to engage in any substantial gainful activity by reason of any medically determinable

27  physical or mental impairment which can be expected to result in death or which has lasted or can

28  be expected to last for a continuous period of not less than twelve months." 42 U.S.C.§

4

1  1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability

2  only if his impairments are of such severity that he "is not only unable to do his previous work but

3  cannot, considering his age, education, and work experience, engage in any other substantial gainful

4  work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

5  **STANDARD OF REVIEW**

6  Congress has provided a limited scope of judicial review of a Commissioner's decision.  See

7  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

8  the determination is not based on legal error and is supported by substantial evidence.  See Ukolov

9  v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(citations omitted); Jones v. Heckler, 760 F.2d 993,

10  995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir.

11  1987).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the

12  findings of fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th

13  Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson

14  v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister

15  v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human

16  Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a

17  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

18  389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may

19  reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th

20  Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting

21  the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting

22  Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

23  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

24  402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold

25  the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is

26  substantial evidence to support the administrative findings, or if there is conflicting evidence that

27  will support a finding of either disability or nondisability, the finding of the Commissioner is

28  conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

<u>**SEQUENTIAL EVALUATION PROCESS**</u>

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  Step one determines whether the claimant is engaged in substantial gainful activities.  If he is, benefits are denied. 20 C.F.R.  § 416.920(a)(4)(i), (b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death, or continuously lasted or be expected to last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii), (c).  If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied.  <u>Id.</u>

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), (d);  20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d).  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the benefits claimed under the Act."  <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971) (citations

omitted).   In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found at step one that Claimant has not engaged in substantial gainful activity since December 30, 2003 – the date Claimant filed his SSI application and, accordingly, his alleged onset date.  (AR 17, 23).  At step two, the ALJ determined that Claimant has the following impairments, which he considers severe: "chronic low back pain, degenerative disc disease, osteoarthritis of the spine, spondylolisthesis[4] of L4 on L5, and left eye sight loss."  (AR 17, 23).  The ALJ noted that Claimant's alleged hearing loss was a non-severe impairment.  (AR 17).  The ALJ concluded that Claimant's impairments, singly or in combination, did not meet or equal any of the listings set forth in 20 C.F.R. Part 404 Subpt. P, App. 1.  (AR 17, 23).  ALJ Teehan specifically found that Claimant's impairments did not meet the criteria under sections 1.04 (disorders of the spine) or 2.02 (visual acuity).  (AR 17).

ALJ Teehan detailed the medical evidence and determined that Claimant retained a residual functional capacity ("RFC") to engage in a wide range, although not the full range, of light work.  (AR 17-20, 23). The ALJ stated that he discounted the opinion of Claimant's treating physician and relied heavily on the DDS analyst and medical reviewer because, inter alia, the treating physician's opinion was based primarily on Claimant's subjective complaints, rather than clinical findings; was based on contradictory diagnosis in the medical reports; and reported an onset date that did not meet

---

[4] Spondylolisthesis occurs when there is a forward dislocation of one vertebra over the one below it, which causes pressure on the spinal nerves.

1  the 12-month durational requirement.  (AR 20).  ALJ Teehan also accorded some weight to the

2  examining consultant's evaluation to the extent that the consultant reported that Claimant's

3  symptoms were inconsistent with the MRI findings.  (Id.).  The ALJ added, however, that the

4  consultant's assessment concerning Claimant's limitations was inconsistent with his clinical findings

5  and, accordingly, the ALJ rejected the restrictions imposed on Claimant by the consultant.  (Id.).  The

6  ALJ also found Claimant's subjective testimony not wholly credible under Social Security Ruling

7  ("SSR") 96-7p, in light of his activities, inconsistencies between his testimony and the record, and

8  the objective evidence.  (AR 20-22, 23).

9       At step four, the ALJ found that Claimant could not perform his past relevant work.  (AR 22-

10  23).  The ALJ found, at step five, that, using Medical-Vocational Guideline 202.15 and 202.07 as

11  a framework, and given Claimant's RFC, age, and education, there were a significant number of jobs

12  he could perform, citing the examples provided by VE Chandler.  (AR 23-24).  Accordingly, the ALJ

13  concluded that Claimant was not disabled and, therefore, not eligible for SSI payments.  (AR 24).

14                                     **ISSUES**

15       Claimant's Opening Brief raises the following issues for consideration:

16       1. The ALJ erred in failing to adopt, or defer to, the opinion of Claimant's treating physician.

17            a.  The ALJ should have adopted the treating physician's opinion; alternatively,

18            b.  The ALJ should have given greater weight to the opinions of the treating and

19  examining physicians than the nonexamining DDS physicians.

20       2. The ALJ erred in rejecting restrictions imposed by an examining consultant without

21  providing adequate reasons

22       3. The ALJ erroneously discounted the testimony of Claimant as not entirely credible.

23       As discussed above, this Court must uphold the Commissioner's determination that a

24  claimant is not disabled if the Commissioner applied the proper legal standards and there is

25  substantial evidence in the record as a whole to support the decision.

26                                 **DISCUSSION**

27  **1.    Treating physician's opinion**

28       The courts distinguish among the opinions of three types of physicians:  treating physicians,

8

1    physicians who examine but do not treat the claimant (examining consultants) and those who neither

2    examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th

3    Cir. 1995). The opinions of treating doctors should be given more weight than the opinions of

4    doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester,

5    81 F.3d at 830. The opinions of both treating and examining physicians generally are entitled to

6    greater weight than are the opinions of nonexamining physicians. Lester, 81 F.3d at 830.

7        Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected

8    only for "clear and convincing" reasons supported by substantial evidence in the record. Id. at 830.

9    A nonexamining physician's opinion, without more, does not "constitute substantial evidence that

10   justifies the rejection of" a treating physician's opinion. Id. at 831; see Andrews v. Shalala, 53 F.3d

11   1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted,

12   and the opinion of a nontreating source is based on independent clinical findings that differ from

13   those of the treating physician, the opinion of the nontreating source may itself be substantial

14   evidence; it is then solely the province of the ALJ to resolve the conflict.").

15       Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject

16   the treating doctor's opinion without providing "specific and legitimate reasons" supported by

17   substantial evidence in the record. Lester, 81 F.3d at 830-831 (quoting Murray v. Heckler, 722 F.2d

18   499, 502 (9th Cir.1983)). This can be done by the ALJ setting out a detailed and thorough summary

19   of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.

20   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). The ALJ, however, must do more than

21   offer his conclusions. He must set forth his own interpretations and explain why they, rather than

22   the doctor's, are correct. Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.1988).

23       In Orn v. Astrue, ___F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth Circuit

24   reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an

25   examining physician over that of a treating physician. "When an examining physician relies on the

26   same clinical findings as a treating physician, but differs only in his or her conclusions, the

27   conclusions of the examining physician are not substantial evidence. Orn, 2007 WL 2034287, *5

28   (citation and quotation omitted). "By contrast, when an examining physician provides independent

1    clinical findings that differ from the findings of the treating physician, such findings are substantial

2    evidence." Id. (citation omitted).  "Independent clinical findings can be either (1) diagnoses that

3    differ from those offered by another physician and are supported by substantial evidence . . . or

4    (2) findings based on objective medical tests that the treating physician has not herself considered."

5    Id. (citations omitted).

6            **a.  Failure to adopt treating physician's opinion**

7            Claimant contends that the ALJ erred in failing to adopt the RFC Questionnaire completed

8    by Claimant's treating physician, Christopher Kolker, M.D.  (Doc. 15, pp. 8-10).  Claimant asserts

9    that Dr. Kolker's assessment, which concluded that Claimant was severely limited, is supported by

10   the medical evidence and, therefore, the ALJ violated SSR 96-2p when he rejected Dr. Kolker's

11   opinion.  (Id.).  The undersigned disagrees.

12           Dr. Kolker, a Family Healthcare Network staff physician, completed a RFC Questionnaire

13   (the "opinion") on September 15, 2005 – one week after the administrative hearing was held.  (AR

14   231-235, 236).  Dr. Kolker reported that he had seen Claimant approximately eight times since

15   becoming Claimant's treating physician in November 2004.  (AR 231).  He diagnosed Claimant as

16   suffering from degenerative disc disease of the C-Spine and L-Spine, congenital blindness of the left

17   eye, chronic obstructive pulmonary disease, and spondylolisthesis of the L4 disc, with a fair to poor

18   prognosis.  (Id.).  Dr. Kolker identified Claimant's symptoms as constant, severe low back pain

19   radiating to legs bilaterally and legs giving out when Claimant stood.  (Id.).  According to Dr.

20   Kolker, his opinion was based on objective signs upon examination and he was treated solely with

21   prescription medicine because Claimant could not afford an MRI or alternative forms of treatment,

22   such as pain management or physical therapy.  (AR 232).  He reported that Claimant's symptoms

23   frequently precluded him from concentrating or paying sufficient attention to enable him to work.

24   (Id.).  Dr. Kolker concluded that Claimant could walk less than one block, sit twenty minutes, stand

25   for ten minutes, and had to frequently take walks throughout the day.  (AR 233).  He further noted

26   that Claimant would have to change positions, take unscheduled breaks, could not lift more than ten

27   pounds, and had severe postural limitations.  (AR 234).  Although Dr. Kolker reported that Claimant

28   was restricted with respect to reaching, fingering, and handling, he stated that Claimant could

1  perform all of the related activities 100% of the time. (AR 235). Dr. Kolker added that Claimant

2  was blind in his left eye and his right eye was compromised. (Id.). He stated that the Claimant's

3  restrictions became effective on September 15, 2005.[5] (Id.).

4      Dr. Kolker's medical records, upon which his opinion is based, are inconsistent, and, except

5  for the results of the November 12, 2004 x-ray that he ordered, rely primarily on Claimant's

6  subjective complaints and self-reported medical history, most of which is not supported by any

7  diagnostic tests. (See AR 215-26). The x-ray revealed many of the back problems that Dr. Kolker

8  reported in his opinion. (Compare AR 221-222 with AR 231). There is no indication that Dr.

9  Kolker had access to Claimant's prior medical records or diagnostic tests. (See AR 215-26, 231-35).

10     Between April 2002 and July 2003, Claimant received medical care at Visalia Health Care

11 Center, primarily from Gilbert Sunio, M.D. (AR 174-187). Claimant initially informed Dr. Sunio

12 that he had episodic periods of back pain but, after being prescribed Tylenol #3 (tylenol with

13 codeine) and ibuprofen, he felt better. (AR 174, 183). X-rays of Claimant's back were taken in

14 April 2003 and, in May 2003, Dr. Sunio ordered an MRI to rule out a herniated disc. (AR 179-180).

15 The x-ray revealed a narrowing of the L4-L5 interspace and degenerative disc disease. (AR 170).

16 The results of the MRI, which was performed on June 4, 2003, showed L4-L5 degenerative disc

17 change and mild neural foraminal narrowing, which could explain Claimant's lower back bain, and

18 spondylolisthesis. (AR 168-169). The MRI further indicated mild degenerative disc and

19 osteoarthritis changes at other lumbar spine discs, but no stenosis. (Id.). Based on the x-ray and

20 MRI, Dr. Sunio's assessment was that Claimant suffered chronic back pain secondary to

21 osteoarthritis. (AR 178). Dr. Sunio did not evaluate Claimant's RFC or non-exertional limitations.

22 (See generally AR 174-187).

23     On April 14, 2004, Dr. Vinay K. Buttan, an examining consultant, evaluated Claimant. (AR

24 190-192). Dr. Buttan noted that Claimant was sitting comfortable and walked with a normal gait,

25

26     [5] As the ALJ noted, if Claimant's impairments did not preclude him from working until September 15,
27 2005, absent a statement that his impairments would result in death or last twelve months, Claimant would not satisfy
the durational requirements to collect SSI payments. 42 U.S.C. § 1382c(a)(3)(A); (AR 20). Dr. Kolker did not
28 indicate whether or not Claimant's impairments would continue past September 15, 2006, and, therefore, his opinion
did not meet the requirements that would render Claimant eligible for SSI payments. Id.; (AR 235).

1   despite his complaints of persistent, radiating lower back pain and pain-related problems in sitting,

2   standing, and walking. (AR 190-91).  Upon examination, Dr. Buttan reported that Claimant was able

3   to perform most of the requested movements, although Claimant stated that he suffered severe pain

4   while during the movements.  (AR 191).  Dr. Buttan found that Claimant had low back pain with an

5   unknown etiology, adding that his symptoms were disproportionate to the MRI results.  (Id.).  He

6   urged that Claimant be evaluated by an orthopedist who specialized in the back for  a proper

7   assessment of Claimant's back impairments.  (Id.).  Until a more exact evaluation could be made,

8   Dr. Buttan imposed limitations on Claimant that included lifting no more than fifteen-to-twenty

9   pounds at a time; sitting a maximum of three-to-four hours with a break every thirty minutes;

10  walking two-to-three hours with normal breaks; and standing three-to-four hours with normal breaks.

11  He further stated that Claimant should avoid repetitive bending, climbing, and squatting.  (Id.).

12          The April 23, 2004, nonexamining assessment by the DDS physicians, based on their review

13  of the medical records and the results of Claimant's MRI and X-Rays pre-dating the one ordered by

14  Dr. Kolker, concluded that Claimant retained the RFC to perform light work, but had some postural

15  and visual limitations.  (AR 194-203).  The DDS assessment opined that Dr. Buttan's restrictions

16  were exaggerated in light of his objective findings and the fact that the MRI did not support the

17  limitations he imposed.  (AR 200).  In addition, Claimant's previous treating physician, Dr. Sunio

18  reported that the same diagnostic evidence indicated degenerative disc disease and spondylolisthesis,

19  and noted that Claimant stated that he only had on-and-off episodes of pain, which the prescribed

20  medication alleviated.  (AR 174-187).  Dr. Sunio diagnosed chronic back pain, but apparently was

21  not asked to render an opinion as to Claimant's limitations.  (AR 178).  Given his medical records

22  and diagnosis, it is unlikely that Dr. Sunio would have found Claimant as limited as did Dr. Kolker.

23          The ALJ rejected Dr. Kolker's opinion because he believed it was based on Claimant's

24  subjective complaints, impairments for which Dr. Kolker had no supporting evidence, and

25  inconsistent findings in his medical records.  In sum, the ALJ found that Dr. Kolker's opinion was

26  "conclusionary and brief, and unsupported by clinical findings."  (AR 20).  In contrast, the

27

28

1   evaluations by Dr. Buttan and the nonexamining DDS physicians[6] constituted substantial evidence

2   because they considered clinical findings that Dr. Kolker had not, specifically the MRI, and

3   concluded that Claimant's self-reported limitations were not supported by the evidence. (AR 190-

4   92, 194-203).   Both of these evaluations, to differing degrees, found that Claimant had far fewer

5   restrictions than did Dr. Kolker, who opined that Claimant was virtually incapacitated. (See above).

6   Because Dr. Kolker's opinion was based on only one x-ray, and other physicians found different

7   diagnoses and/or limitations based on diagnostic and clinical findings that Dr. Kolker had not

8   considered, the ALJ did not err in rejecting Dr. Kolker's opinion.

9          **b.  Deference to DDS physicians over treating physician**

10         Claimant next avers that the ALJ was obligated to give greater deference to Dr. Kolker's

11   opinion, even if he did not adopt it, based on the factors in 20 C.F.R. § 416.927. (Doc. 15, p. 10).

12   Claimant contends that the ALJ erred by according substantial weight to the evaluation by the

13   nonexamining DDS physicians, and some weight to the consulting physician's assessment, especially

14   in light of the fact that the consultant had access to an older MRI but not the most recent x-ray of

15   Claimant's back. (Doc. 15, p. 10-12).

16         When, as here, there is "substantial evidence" in the record contradicting the opinion of the

17   treating physician, the opinion of the treating physician is no longer entitled to "controlling weight."

18   20 C.F.R. § 416.927(d)(2).   In that event, the ALJ is instructed by § 416.927(d)(2) to consider the

19   factors listed in § 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating

20   physician.   Those factors include the "[l]ength of the treatment relationship and the frequency of

21   examination" by the treating physician; and the "nature and extent of the treatment relationship"

22   between the patient and the treating physician.   20 C.F.R. § 416.927(d)(2)(i)-(ii).   Even when

23   contradicted by an opinion of an examining physician that constitutes substantial evidence, the

24   treating physician's opinion is "still entitled to deference."   SSR 96-2p; Orn, 2007 WL 2034287, *6.

25   "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should

26   be adopted, even if it does not meet the test for controlling weight."   Id.   As mentioned above, a

27

28          [6] Although a nonexamining source's evaluation cannot, by itself, be substantial evidence, here the DDS
       physicians' assessment is supported by at least one examining doctor who reviewed the same diagnostic reports.

13

1  nonexamining physician's opinion generally cannot be accorded more weight than those of

2  examining or treating physicians. Lester, 81 F.3d at 830.

3        In the instant case, the ALJ gave little or no weight to Dr. Kolker's opinion for the same

4  reasons that he did not adopt Dr. Kolker's opinion. (AR 20).  Instead, the ALJ gave substantial

5  weight to the nonexamining DDS analysts and reviewers and some weight to Dr. Buttan, the

6  examining consultant. (Id.).  According to the ALJ, the assessment by the DDS physicians was

7  consistent with the diagnostic evidence and the daily activities regarding which Claimant testified.

8  (Id.).  The ALJ added that he attributed weight to Dr. Buttan's finding that Claimant's systems did

9  not correlate with the results of his MRI, but, because of that statement, he could not accord much

10 weight to the restrictions that Dr. Buttan imposed on Claimant, especially given that Dr. Buttan

11 believed an evaluation by a back specialist was warranted. (Id.).  Dr. Buttan implicitly and explicitly

12 suggested that his recommended limitations last until Claimant was evaluated by an orthopedist.

13 (AR 191).

14        Under the factors in 20 C.F.R. § 416.927(d)(2)-(6), the ALJ did not err when he refused to

15 accord substantial weight to Dr. Kolker's opinion for the following reasons:  (1) Dr. Kolker's

16 knowledge of Claimant's ailments was minimal and his records were inconsistent, as they were

17 based primarily on Claimant's reported medical history and one diagnostic test (x-ray),  he provided

18 Claimant with conservative treatment, and did not refer him to an orthopedist, § 416.927(d)(2)(ii);

19 (2) the only evidence in support of Dr. Kolker's opinion was the one x-ray he ordered taken, and his

20 supporting explanations were based on Claimant's subjective statements, § 416.927(d)(3); (3) Dr.

21 Kolker's opinion is inconsistent with the record in general, § 416.927(d)(4); and (4) Dr. Kolker is

22 not a back specialist, § 416.927(d)(5).  Thus, of the six factors that determine the weight to accord

23 the treating physician's opinion, at least four of them work against Dr. Kolker, and the other two are

24 neutral as opposed to favorable. See 20 C.F.R. § 416.927(d)(2)(i) (length of treatment and frequent

25 of examination); 20 C.F.R. § 416.927(d)(6) (other factors).

26        The ALJ also gave less weight to Dr. Kolker and examining consultant Dr. Buttan than to

27 the nonexamining DDS physicians, despite the requirements that more weight be accorded to a

28 treating physician's opinion, as addressed above, and an examining physician's opinion than to that

1   of a nonexamining source.  20 C.F.R. § 416.927(d)(1) and (2).  Claimant contends that, because

2   neither Dr. Buttan nor the DDS physicians had access to the November 2004 x-ray, their assessments

3   should carry less weight than Dr. Kolker's opinion.  (Doc. 15, pp. 10-11).

4           Claimant's argument lacks merit because the November 2004 x-ray ordered by Dr. Kolker

5   does not reveal that his back ailments were significantly worse than indicated in Claimant's 2003

6   x-ray and MRI.  (Compare AR 168–69 & 170 with 221-22).  As discussed above, the numerous

7   problems with Dr. Kolker's opinion are not saved by the 2004 x-ray.  However, DDS assessments

8   generally cannot be accorded substantial weight.  Lester, 81 F.3d at 831.  Although the ALJ may give

9   weight to the nontreating, DDS consultants, the ALJ must discuss the factors set forth in 20 C.F.R.

10  § 416.927(a)-(e)  with  respect  to  the  DDS  consultants'  assessments.   20 C.F.R.  § 416.927(f).

11  Moreover, a "check the box" assessment, that contains a dearth of explanation for the limitations,

12  bears little weight.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).  In the instant case, the ALJ

13  relied on the nonexamining DDS physicians' check-the-box forms, which included scant rationale

14  for its evaluation, to find that Claimant had minimal limitations.  (AR 20, 194-203).  The ALJ's

15  explanation for according substantial weight to the DDS assessment was that it was consistent with

16  the objective evidence and Claimant's daily activities.  (AR 20).  The ALJ, however, failed to discuss

17  the factors in 20 C.F.R. § 416.927(a)-(e), as mandated, and contradicted his statement with respect

18  to the rejection of Dr. Kolker's opinion that it was a mere check-the-box form that did not deserve

19  significant weight.  (Id.).  Accordingly, the issue of whether the DDS assessment in the instant case

20  should  be  accorded  substantial  weight  is  remanded  for  further  consideration  pursuant  to  the

21  applicable regulations and this Circuit's case law

22  **2.      Rejection of Examining Consultant's imposed restrictions without adequate reasons**

23          Claimant asserts that the ALJ rejected the restrictions imposed by the examining consultant

24  without providing adequate reasons for discounting the specified limitations.  (Doc. 15, p. 12).

25          An ALJ must provide specific, legitimate reasons that are supported by substantial evidence,

26  for rejecting an examining physician's evaluation or opinion.  Widmark v. Barnhart, 454 F.3d 1063,

27  1066 (9th Cir. 2006) (citations and quotations omitted); see also, Roberts v. Shalala, 66 F.3d 179,

28  184 (9th Cir. 1995) ("An ALJ may reject the testimony of an examining, but nontreating physician,

                                                    15

1  in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for

2  doing so, and those reasons are supported by substantial record evidence").

3      Here, the ALJ rejected the restrictions that Dr. Buttan imposed on Claimant pending a

4  consultation with a back specialist because Dr. Buttan opined that Claimant's symptoms did not

5  correlate with the results of the 2003 MRI, although Dr. Buttan diagnosed Claimant with low back

6  pain of unknown etiology.  (AR 20, 191).  The ALJ also discounted the restrictions based on Dr.

7  Buttan's recommendation that Claimant see a back specialist. (AR 20).  ALJ Teehan did not provide

8  specific and legitimate reasons based on substantial evidence for discounting Dr. Buttan's

9  assessment, except for what the ALJ deemed were inconsistencies between Dr. Buttan's finding that

10  Claimant's symptoms did not correlate with the MRI and the subsequent imposition of limitations

11  pending an orthopedic consult.  (Id.).  The ALJ's stated rationale does not qualify as substantial

12  evidence to grant less deference to Dr. Buttan's opinion because it is neither (1) a diagnosis that

13  differs from that of another doctor that is supported by substantial evidence or (2) a finding based

14  on objective medical tests that Dr. Buttan had not considered.  Orn, 2007 WL 2034287, *5.  Nor

15  does the ALJ summarize the facts and conflicting evidence, based upon which he states his

16  interpretation and explains why he, instead of the doctor, is correct.  Magallanes, 881 F.2d at 751;

17  Embrey, 849 F.2d at 421-422.

18      The ALJ's brief rationale for rejecting Dr. Buttan's evaluation does not satisfy the requisite

19  "specific and legitimate" standard and is not based on substantial evidence.  Accordingly, this matter

20  is remanded for further consideration.

21  **3. Improperly finding Claimant's testimony not credible**

22      Claimant's final allegation of error is that the ALJ found his testimony not credible despite

23  the medical evidence that supported his subjective statements.  (Doc. 15, pp. 12-13).  Claimant

24  further contends the ALJ did not comply with the factors delineated in the applicable regulations and

25  SSR 96-7p, such as the side effects of medication, when he assessed the credibility of Claimant's

26  subjective statements.  (Doc. 15, pp. 13-14).

27      A two step analysis applies at the administrative level when considering a claimant's

28  subjective credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant

16

1    must produce objective medical evidence of an impairment and show that the impairment could

2    reasonably be expected to produce some degree of symptom. Id. at 1281-1282. Pursuant to SSR

3    96-7p, however, the ALJ may not disregard the claimant's pain testimony only because there is a

4    lack of medical records evidencing an impairment that causes pain. SSR 96-7p; Light v. Soc. Sec.

5    Admin., 119 F.3d 789, 792 (9th Cir. 1997). Nonetheless, if there is no evidence that the claimant

6    is malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms

7    "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

8    This level of specificity is crucial because, in its absence, effective judicial review may not be

9    possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of

10   specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible

11   for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence");

12   SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to

13   any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

14   for that weight").

15         The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does

16   not seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's

17   pain testimony is "unjustified or exaggerated." Orn, 2007 WL 2034287, *11. This Court further

18   notes that there are any number of clear and specific findings that an ALJ can make, many of which

19   are identified in SSR 96-7p. Such findings include: (1) whether "the level or frequency of treatment

20   is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether

21   "the medical reports or records show that the individual is not following the treatment as prescribed

22   and there are no good reasons for this failure," id., (3) the consistency of statements made by the

23   claimant to physicians, to those deciding benefits under other programs (e.g., workers'

24   compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms

25   may vary in their intensity, persistence, and functional effects, or may worsen or improve with time,

26   and [that] this may explain why the individual does not always allege the same intensity, persistence,

27   or functional effects of his or her symptoms." Id. Each of these and other potential findings are fact-

28   specific, precisely the province of the ALJ. Some other ALJ findings, as identified in reported cases,

are illustrative and demonstrate the almost limitless ways in which ALJ's can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility, (6) an ALJ found that claimant had been uncooperative during consultative examinations, and illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998), and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.  For a brief synopsis of some factors that can form a basis for ALJ credibility findings, see Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

1    In the instant case, the ALJ concluded that Claimant's activities, which he summarized as

2  including singing in church, washing dishes, cooking easy meals, watching television, driving one

3  and one-half hours with two stops to minister to children at a church camp, and teaching Sunday

4  school, indicate that Claimant does not suffer the excruciating and limiting pain to which he testified.

5  (AR 21).  The ALJ then addressed the medical evidence and contradictions in the records that further

6  undermined the credibility of Claimant's testimony.  (AR 21-22).  Specifically, the ALJ noted that

7  Claimant's former treating physician, Dr. Sunio, reported that prescription medication controlled

8  Claimant's episodic pain; that Claimant stated in his application paperwork that he had been taking

9  Vicodin since 1999, which was belied by the medical records; that Claimant informed another

10  physician that he had been advised to undergo surgery, which no medical records evidenced;[7] that,

11  in 2004, Claimant told examining consultant Dr. Buttan that his pain was so severe that he frequently

12  had to eat while laying down, but that was the same year that Claimant drove to the church camp and

13  ministered to the children.  (AR 21).  The ALJ discussed additional inconsistencies between

14  Claimant's testimony and the medical records, such as Claimant's statement that he was going blind

15  in his right eye, in contrast to the records indicating that he only needed stronger reading glasses, and

16  the fact that the November 2004 x-rays did not indicate stenosis or nerve root impingement.  (AR

17  21-22).  Finally, the ALJ noted that Claimant's treatment had been conservative in that he had not

18  been prescribed a TENS unit or stronger medication and, although Claimant testified that the

19  medicine prevented him from working if he had to take it during the day, that occurred only three

20  days out of seven.  (AR 22).  Based on the ALJ's recitation of Claimant's daily activities and the

21  inconsistencies in his medical records, the ALJ found that Claimant's subject complaints warranted

22  "very little weight."  (Id.).

23    The ALJ provided ample reasons for discounting the credibility of Claimant's testimony.

24  The medical history that Claimant reported to Dr. Kolker, however, calls into doubt Claimant's

25  overall veracity.  (See AR 215-29).  Claimant informed Dr. Kolker that he had a history of stomach

26

27    [7] Not only did Claimant tell this physician that surgery had been recommended, but he also told the
examining consultant, Dr. Buttan, that an orthopedic surgeon had recommended surgery, which Claimant refused.
28  (AR 190).

problems, difficulty breathing to the point that he would turn blue, and an L4-L5 fracture. (AR 224). None of the diagnostic tests from 1999 through Claimant's first visit to Dr. Kolker indicated that he fractured any portion of his spine, and there is no indication that he suffered stomach or breathing problems that were of sufficient severity that he sought medical treatment.  (See generally Administrative Record).  Further doubts as to Claimant's honesty arise based on his testimony that he did not look for a job once he had completed vocational training to be a computer technician because the technology he had learned already was obsolete and his informing one of his doctors that he could not perform the job because he could not lift anything.  (See AR 188-189, 274-275).

Given the inconsistencies between Claimant's subjective complaints, his daily and less frequent activities, and his medical records, coupled with the discrepancies in what he has told various doctors, and his conservative treatment, this Court concludes that the ALJ did not err in discounting as not credible Claimant's testimony.

Accordingly, it IS ORDERED that:

1.      Claimant's Social Security Complaint IS GRANTED in part; and

2.      The matter IS REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further considerations as to the appropriateness of giving substantial weight to the nonexamining DDS analysts and medical reviewers assessment instead of deferring to Claimant's treating and examining physicians and to provide the Commissioner an opportunity to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the assessment of examining consultant Vinay K. Buttan, M.D.

3.      Judgment be ENTERED for Claimant, Michael Howard, and against Defendant, Michael J. Astrue.

IT IS SO ORDERED.

Dated:   **September 10, 2007**                                    **/s/ Theresa A. Goldner**
                                                                                    UNITED STATES MAGISTRATE JUDGE